E-FILED
Wednesday, 31 May, 2006 11:48:00 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Trustees of the Sheet Metal Workers<br>Local 91 Health & Welfare Benefit Fund,<br>Plaintiff | )<br>)<br>)<br>) | |
| | ) | Case No. 05-4004 |
| | ) | |
| David Tennant, Individually and d/b/a<br>Born Heating a/k/a Born Heating & Air<br>Conditioning, and Tennant Enterprises,<br>Inc.,<br>Defendants | )<br>)<br>)<br>)<br>) | |

**ORDER**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the Defendants' motion for partial summary judgment (# 14). The motion is fully briefed and I have carefully considered the arguments made by the parties and the evidence submitted in support thereof. For the following reason, the motion is allowed.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 931 (7th Cir. 1995), citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Waldridge v. American Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir. 1994).

## UNDISPUTED FACTS

The facts in this case are not disputed. Born Heating and Air Conditioning Company ("BHACC") was an Iowa corporation engaged in heating, air conditioning and venting work. At all relevant times, BHACC was signatory to a Collective Bargaining Agreement ("CBA"). Gary Bourne was the president of BHACC.

Tennant Enterprises, Inc. ("TEI") is an Iowa corporation that was incorporated in Iowa in 2000. It has at all relevant times remained a corporation in good standing in Iowa. Dave Tennant was the president of TEI.

Following incorporation of TEI, the company engaged in negotiations with BHACC for the sale of some of BHACC's assets to TEI. Among the assets that TEI wanted to purchase was the name "Born Heating and Air Conditioning." To avoid confusion, BHACC agreed to change its name to "Bourne Enterprises, Inc." before the sale was consummated. The name "Born Heating and Air Conditioning" would be listed separately in the Asset Purchase Agreement.

Pursuant to the agreement, BHACC filed Articles of Amendment to its Articles of Incorporation with the Iowa Secretary of State. The Amendment deleted the name "Born

2

Heating and Air Conditioning Company" and substituted the corporate name "Bourne Enterprises, Inc.".  Immediately thereafter, TEI entered into an Asset Purchase Agreement with Gary Bourne and BHACC, whereby TEI purchased the assets defined in that Agreement, including the name "Born Heating and Air Conditioning Company."

On June 30, 2000, TEI filed a Fictitious Name Resolution with the Iowa Secretary of State adopting the name "Born Heating and Air Conditioning Company" for TEI.

After all of the above events, Dave Tennant signed a Letter of Assent, agreeing to be bound by the terms and conditions of the above referenced CBA.  Tennant signed as follows:

BORN HEATING
**Employer Name**

/s/ David W. Tennant
**Employer Representative**

There was no provision in the CBA indicating that Tennant was agreeing to be liable for the obligations thereunder, nor was the CBA amended thereafter to indicate any such agreement.  On November 5, 2004, TEI filed another Fictitious Name Resolution with the Iowa Secretary of State requesting dissolution of the fictitious name "Born Heating and Air Conditioning Company."

On the basis of the Letter of Assent, the Plaintiff contends that, as a matter of law, Dave Tennant is personally liable for the back contributions sought in this case.  Dave Tennant has filed for summary judgment, asserting that he cannot be personally liable as a matter of law, because he signed as a corporate officer and not in his individual capacity.

**DISCUSSION**

3

As a general rule, individuals acting as corporate officers and corporate shareholders cannot be held personally liable for a corporation's obligations under ERISA. Plumbers' Pension Fund, Local 130 v. Niedrich, 891 F.2d 1297 (7th Cir. 1989), cited in Steinberg v. Buczynski, 40 F.3d 890 (7th Cir. 1994).  See also, Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp., 845 F.2d 23,25 (1st Cir. 1988)(ERISA imposes no federal obligation of corporate officers to make contributions).  That general rule is not absolute;  there are exceptions where the corporation is operating as an alter ego of the individual or where there are facts that warrant piercing the corporate veil. Neidrich, 891 F.2d at 1301.  Neither of those circumstances is present here.

There is also an exception where there is a provision in the collective bargaining agreement providing for personal liability of the signatory.  See, e.g., Chicago Painters and Decorators Pension, Health and Welfare v. Vladimir Engels Decorating, Inc., No. 90C6166, 1992 WL 198440, Aug. 11, 1992 (N.D.Ill.); Starrett Paving, 845 F.2d at 26.  There is no such provision in the CBA at issue in this case.

In Niedrich, supra, the fund sued two former officers of a dissolved corporation, seeking recovery of multi-employer contributions owed to the fund.  After finding no basis in the contract or under state or federal law to hold them personally liable, the Seventh Circuit reiterated a comment it had made in an earlier case:

> It would take a compelling argument to persuade us to depart from an interpretation of the law adopted ... and followed by so many courts ... An officer who does not make a contractual commitment to a pension or welfare plan still could be personally liable, to the extent he is liable for general corporate debts under state corporate law.  But when state law recognizes a separate identity of manager and firm, liability under ERISA depends on the contents of the plan and related agreements.

891 F.2d at 1301, quoting Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1192-94 (7th Cir. 1989).  The Court of Appeals concluded its discussion by stating that where the individuals are neither parties to the plan nor the collective bargaining agreement and there is no evidence of alter ego or piercing the corporate veil, there is no basis for holding corporate officers liable.  Id.

Plaintiff points out that when Tennant signed as the "employer representative", there was no implication that the employer was a corporation.  In the absence of such an implication, Plaintiff asserts that personal liability should arise because of the common use of trade names in the sheet metal industry.  Plaintiff cites no law in support of this contention, and the court has found none.  While there may be circumstances in which industry practice has implications for legal substance, in this situation the industry practice falls far short of the "compelling" level required by the Seventh Circuit to depart from the general rule of non-liability for corporate officers.  It is clear from the cases cited herein that where the union wants an individual signatory to take on personal responsibility for company obligations, provisions stating such are routinely included in the documents being signed.  The ability to include such provisions negates any suggestion that the industry's need for this fundamental change in the law  is compelling.  It would turn corporate law on its head to assess individual liability to officers of corporations under these circumstances.

Plaintiff also argues that it would be proper to find an intent to accept personal liability based on Illinois' law of an agent signing for an undisclosed principal.  I disagree.  As a general rule, an agent  is not personally bound by the terms of a contract executed on behalf of his principal where the agency relationship is known to the other party at the time of contracting, unless the agent agrees to be personally bound thereby.  Western Cas.

5

& Sur. Co. V. Bauman Ins. Agency, 401 N.E.2d 614 (Ill.App. 1980).  There is law governing the situation where the principal is undisclosed, and it is on that law that Plaintiff relies.  But where, as here, public records gave legal notice of the corporate nature of the principal, this Court will not find as a matter of law that the corporate status of the employer was unknown to the other signatory.  The general rule applies.

The cases cited by Plaintiff are factually distinguishable.  The Illinois Supreme Court in  Central States Southeast & Southwest Areas, Health & Welfare Fund v. Pitman, 383 N.E.2d 793, 794 (Ill.App. 1978) found liability based on an express provision in the underlying contract ("I, Glen R. Pitman, as an individual and as president of G.R. Pitman Trucking Co.).  See also, Dunlop v. McAtee, 333 N.E.2d 76 (Ill. 1975)(no individual liability inferred from signature "Crane M. Construction Co. By C.G. McAtee").  In the other case on which Plaintiff relies, the company owner held himself out as president and CEO of a corporation, when the company had never been incorporated.  Callaway v. Volex, Inc., 2003 WL22425018, March 28, 2003 (S.D.Ind.).  None of these cases involved facts such as the ones present in this case.

It would be legally erroneous to infer that Dave Tennant intended to sign in his individual capacity, when: (1) he actually signed as an "employer representative," (2) that employer, of which he was an officer, was a properly incorporated company, and (3) the document he signed made no reference whatsoever to any individual obligations.

## CONCLUSION

There being no basis for individual liability of Dave Tennant, his motion for summary judgment (#14) is allowed.  The Clerk is directed to terminate Dave Tennant as a party in this case.

ENTER this 31st day of May 2006.

S/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE